809 F.2d 786
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
WRIGHT CHEMICAL CORP., Plaintiff
v.
DEL REY CHEMICAL INTERNATIONAL, INC., Defendant-Appellant,
v.
Jim L. DAHLENBURG, d/b/a Alvin Chemical; Third Party
Defendant-Appellee
 No. 86-3564.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 11, 1986.
Decided Dec. 23, 1986.
 
 Before SPROUSE, Circuit Judge, HAYNSWORTH, Senior Circuit Judge, and MAXWELL, United States District Judge for the Northern District of West Virginia, sitting by designation.
 Michael Murchison (Murchison, Taylor & Shell on brief) for appellant.
 Carter Tate Lambeth (Johnson & Lambeth on brief) for appellee.
 PER CURIAM:
 
 
 1
 The district court entered summary judgment against del Rey Chemical International, Inc., upon its claim against Wright Chemical Corporation and James L. Dahlenburg of wrongful interference with contract, wrongful interference with prospective economic advantage, and unfair and deceptive trade practices under N.C.Gen.Stat. Sec. 75-1.1 (1986). We affirm.
 
 
 2
 This judicial contest began when Wright Chemical, a North Carolina corporation, filed suit in a North Carolina state court against del Rey, a Texas corporation, for the purchase price of a shipment of hexamethylene tetramine to a California plant operated by Dow Chemical. The shipment had been brokered by del Rey and, later though not initially, del Rey admitted its liability to pay the invoice.
 
 
 3
 The action was removed by del Rey from state court to the United States District Court for the Eastern District of North Carolina. del Rey filed an answer initially denying that it owed the money claimed by Wright Chemical, and asserting an affirmative counterclaim alleging tortious interference with its contract and business relationship with Dow Chemical and deceptive trade practices in violation of North Carolina law. It then filed a third-party claim against James L. Dahlenburg, who had been del Rey's vice president in charge of industrial chemical sales, and who was then running a competing brokerage business in Alvin, Texas, where del Rey was headquartered.
 
 
 4
 While entering summary judgment against del Rey on the merits upon the counterclaim against Wright Chemical and the third-party claim against Dahlenburg, the district court denied Wright Chemical's claim for attorney's fees. del Rey appealed the ruling on the merits, and Wright Chemical appealed from the order denying its prayer for attorney's fees. Those parties settled their differences however, and, by agreement, both of the cross appeals were dismissed with prejudice. That leaves in the case only del Rey's appeal of the district court's grant of summary judgment to Dahlenburg from del Rey's claim of tortious economic conduct.
 
 
 5
 We conclude that the district court properly entered summary judgment in Dahlenburg's favor.
 
 I.
 
 6
 Beginning in 1980, del Rey, a broker-distributor, began selling hexamethylene tetramine to Dow Chemical for use in an operation conducted in one of Dow Chemical's Texas plants. That operation was soon transferred to a plant in California, however. In 1981, del Rey employed James Dahlenburg as a vice president in charge of the sale of industrial chemicals. Ernest Hulsey, Dow's west coast purchasing manager, handled Dow's purchases of hexamethylene tetramine, and all of his dealings with del Rey were through Dahlenburg.
 
 
 7
 Wright Chemical was the source of del Rey's supply. The practice was for Hulsey, on behalf of Dow, to file a general purchase order with del Rey, against which specific purchase orders would be drawn. A specific purchase order would be relayed by del Rey to Wright Chemical, which would ship the chemical directly to Dow's plant in California.
 
 
 8
 In the summer of 1984, Dahlenburg decided he would set up a competing business and leave del Rey. Some months after the termination of his employment by del Rey, both del Rey and Dahlenburg were in touch with Dow's Hulsey, and with Wright. In the end, Hulsey concluded that he preferred to deal with Dahlenburg, with whom he had established a satisfactory relationship, and Wright agreed that it would ship the chemicals to Dow upon Dahlenburg's orders.
 
 II.
 
 9
 The district court granted summary judgment on the claim of tortious interference with contract on the ground that there was no contract between Dow and del Rey. It was clearly correct in doing so. It is not even alleged that Dahlenburg procured or induced an unlawful breach of contract by Dow.
 
 
 10
 del Rey did have an established business relationship with Dow, but former employees are free to compete with their former employers so long as they do not use confidential information obtained during the employment relationship to secure an unfair advantage. It is alleged that Dahlenburg successfully sought to become the broker-distributor of hexamethylene tetramine manufactured by Wright and shipped to Dow, but there is no allegation of anything to suggest that it was not entirely lawful competition.
 
 
 11
 What N.C.Gen.Stat. Sec. 75-1.1 has to do with this claim is obscure. In its pleadings, del Rey alleged that North Carolina law was controlling. In his brief in this court, Dahlenburg contends that California law is controlling. One would have thought that Texas law would govern a claim of harm suffered in Texas by a Texas citizen from alleged tortious interference with contract and unfair practices committed by another Texas citizen. It is of no moment, however, for there is no allegation of any unfairness or deception. The harm suffered by del Rey simply is the result of lawful competition in an open market.
 
 III.
 
 12
 The judgment of the district court is affirmed.
 
 
 13
 AFFIRMED.